## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KARA ELLEN DOWNS,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:13-cv-923
Spiegel, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the

Commissioner's response in opposition (Doc. 21), and plaintiff's reply memorandum (Doc. 23).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in September 2009, alleging

disability since December 27, 2006, due to a cervical spine injury, status-post cervical spine

surgery, arm and finger numbness, lower back pain, right shoulder/back muscle spasms, and

depression. (Tr. 197).[1] These applications were denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law

judge (ALJ) John S. Pope. Plaintiff and a vocational expert (VE) appeared and testified at the

ALJ hearing. On December 29, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI

applications. Plaintiff's request for review by the Appeals Council was denied, making the

---

[1] The page numbers referenced herein are taken from the administrative record.

decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

2

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)

(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since December 27, 2006, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease of the cervical spine, depression, shoulder pain, tension headaches (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following exceptions: she must never climb ladders, ropes, or scaffolds. She may not engage in any overhead reaching, bilaterally. She is limited to simple, repetitive tasks in which duties are

3

static and changes can be explained and do not require strict production quotas. She may engage in only superficial interaction with coworkers and supervisors.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1964 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (*see* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 27, 2006, through the date of [the ALJ's] decision (20 CFR 404.1520(g)) and 416.920(g)).

(Tr. 67-81).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] Plaintiff's past relevant work was as a preparation cook, cook and restaurant manager. (Tr. 79).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled light occupations such as laundry worker (10,900 jobs in the state economy); hand packager (65,000 jobs in the state economy); and finish inspector (6,500 jobs in the state economy). (Tr. 80).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson,* 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred in rendering an RFC finding that is not supported by substantial evidence; (2) the ALJ erred in evaluating the medical source opinion evidence; and (3) the ALJ erred in assessing plaintiff's credibility. (Doc. 14). Because plaintiff's

arguments presented in support of her first assignment of error challenge the ALJ's credibility finding, the Court will consider plaintiff's first and third assignments of error together.

### 1. The ALJ did not err in evaluating the medical opinion evidence (second assignment of error)

Plaintiff alleges that the ALJ erred in evaluating the medical opinion evidence. Specifically, plaintiff alleges that the ALJ erred by failing to give "good reasons" for not affording "controlling weight" to the opinions of the treating physicians, and by failing to provide valid explanations for the weight given the other medical source opinions. (Doc. 14 at 14-18; Doc. 23 at 3-10).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to

6

give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." A nontreating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson,* 378 F.3d at 544. The opinion of a nontreating but examining source is generally entitled to more weight than the opinion of a nonexamining source. *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)[4]; *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007)). Because a nonexamining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a nonexamining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

---

[4] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d), 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

Under the Social Security regulations, "a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence . . . adverse to the claimant" in a disability proceeding. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting *Richardson*, 402 U.S. at 402). In addition, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence. *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(i)).

**a. The ALJ did not err in weighing the medical opinion evidence related to plaintiff's physical impairments.**

Plaintiff alleges that the ALJ erred by failing to give "controlling weight" to the opinion of her treating physician, Dr. Richard Watson, M.D. (Doc. 14 at 21). The record includes two opinions issued by Dr. Richard Watson. The first opinion was included in a letter Dr. Watson wrote to another physician on May 19, 2008. (Tr. 333-35). Dr. Watson reported on that date that plaintiff had suffered a workplace injury on December 27, 2006. Physical examination findings included the following: Deep tendon reflexes were 3+ in the upper extremity. Strength was decreased to approximately 3 out of 5, particularly in the hand intrinsics. Bicep/tricep strength was 4 out of 5. Abduction was to approximately 90 degrees, and plaintiff had lost approximately 30 degrees of internal rotation. Dr. Watson did not note a positive Hoffman which had previously been noted by another doctor. Dr. Watson diagnosed cervical strain, herniated cervical disc, and cervical spinal stenosis. He concluded: "At this time, it appears that she's at the sedentary level and cannot return to her type of job, but she is not at maximum medical improvement at this time." (Tr. 335).

8

Dr. Watson gave a second opinion in a chart note dated November 12, 2009.  (Tr. 356).

Dr. Watson reported at that time that plaintiff had returned to see him complaining that her neck

and left arm condition had worsened.  On physical examination, her range of motion was "worse

again" and she could only abduct actively about 50 degrees and an additional 10 degrees with

assistance, she had "lost a great deal of external rotation," and her cervical motion was "severely

reduced."  (*Id.*).  She was "bright and alert" and appeared to have no problems with her

medication.  (*Id.*).  Dr. Watson concluded: "Based on her loss of range of motion in her neck and

shoulder and her positive MRI we'll consider her permanently and totally disabled."  (*Id.*).

The ALJ did not give Dr. Watson's opinions any weight.  (Tr. 78).  First, the ALJ rejected

Dr. Watson's November 2009 opinion that he considered plaintiff to be totally and permanently

disabled on the ground this determination is one that is reserved to the judgment of the

Commissioner.  (*Id.*).  The ALJ justifiably rejected Dr. Watson's opinion for this reason.  An

ALJ is not required to accept a physician's conclusion that his patient is disabled.  20 C.F.R. §§

404.1527(d)(1)(3), 416.927(d)(1)(3).  Whether a person is disabled within the meaning of the

Social Security Act is an issue reserved to the Commissioner, and a physician's opinion that his

patient is disabled will not be given "any special significance."  *Id*. *See also Warner v. Comm'r*

*of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the

prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

Further, the ALJ rejected Dr. Watson's May 2008 opinion that plaintiff was limited to

work at the sedentary level on two grounds.  The ALJ found that the noteworthy examination

findings of reduced hand and upper arm strength improved and were not repeated on subsequent

examinations.  (Tr. 78).  In addition, the ALJ determined that the repeated findings of reduced

neck and shoulder range of motion did not support a finding that plaintiff was limited to sedentary work. (*Id*.). These constitute "good reasons" for rejecting Dr. Watson's opinion. *Walters,* 127 F.3d at 530 (treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record before it is entitled to controlling weight) (quoting 20 C.F.R. § 404.1527(d)(2)). The subsequent objective findings substantiate the ALJ's determination of improved hand and upper arm strength. (*See* Tr. 371, 12/08- examining physician Dr. Wachendorf reported strength testing results of 5/5 with "give way weakness"[5]; Tr. 377, 5/08- examining physician Dr. Keller reported motor strength test results of 5/5 in upper extremities with giveaway weakness noted and with full movement of the fingers; he further reported that plaintiff overall did very well on sensory examination testing, "although interestingly she had significant difficulty moving the fingers despite her performance as previously in the grip testing"). Moreover, Dr. Watson did not report clinical or objective findings related to decreased hand and arm strength in his later November 2009 letter opinion. (Tr. 356).

Plaintiff challenges the ALJ's reasons for rejecting Dr. Watson's opinions on several grounds. Plaintiff alleges that the ALJ is not qualified to determine if plaintiff has the ability to function at the sedentary level. In fact, however, the final responsibility for deciding an individual's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Plaintiff also asserts that if the ALJ doubted whether Dr. Watson's opinion was supported, the

_____

[5] This is an apparent reference to "giveaway weakness," a sign that an individual might be exaggerating the effects of her pain. *See Simila v. Astrue*, 573 F.3d 503, 508 (7th Cir. 2009) (citing Muriel D. Lezak *et al.*, Neuropsychological Assessment 326 (4th ed. 2004) ("Neurological examiners repeatedly noted *give-away weakness* (poor effort on strength testing) indicating that [the patient] was actively preserving a disability status.") (emphasis in original)).

ALJ should have requested clarification under Social Security Ruling 96-5. However, an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on the claimant's disability status, not when the ALJ has rejected the limitations recommended by that physician. *See Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 274-75 (6th Cir. 2010) (citing *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 156 n. 3 (6th Cir. 2009)). *See also DeBoard v. Comm'r of Soc. Sec.,* 211 F. App'x 411, 416 (6th Cir. 2006). Here, the ALJ did not indicate that the information in the record was inadequate to make a disability determination. To the contrary, the ALJ rejected Dr. Watson's conclusions as unsupported by his objective findings. Thus, the ALJ was under no obligation to re-contact Dr. Watson.

Plaintiff further alleges that substantial reasons for rejecting a treating physician's opinion must consist of more than the opinions of examining and nonexamining physicians. However, as discussed above, the ALJ relied on more than the opinions of other medical sources to discount Dr. Watson's opinion. Moreover, insofar as the ALJ did rely on the contrary medical evidence of record, the ALJ's decision is supported by substantial evidence. The ALJ gave "significant weight" to the December 2009 physical RFC assessment of nonexamining state agency physician Dr. Gary Hinzman, M.D., which was affirmed by Dr. Gerald Klyop, M.D., on June 1, 2010. (Tr. 78, citing Tr. 437-44; Tr. 508). Dr. Hinzman restricted plaintiff to occasionally lifting/carrying 20 pounds, frequently lifting 10 pounds, standing/walking about 6 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday, never climbing ladders/ropes/scaffolds, and limited overhead reaching. (Tr. 437-44). The ALJ cited Dr. Hinzman's reliance on findings that (1) the objective medical record did not fully support plaintiff's subjective reports of limitations, and she had depression/chronic pain overlay which might impact her perception of her own limitations,

11

and (2) plaintiff was able to care for several pets, perform self-care activities, prepare simple meals, perform light housework, drive occasionally, and shop. (Tr. 78, citing Tr. 442). These are valid reasons for crediting Dr. Hinzman's opinion and support the ALJ's decision to give greater weight to the opinion of the nonexamining physician than to the opinions of plaintiff's treating physician, Dr. Watson. *Hoskins v. Comm'r of Soc. Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

The ALJ also reasonably relied on the opinion of Dr. Alan Kohlhaas, M.D., an orthopedist who performed an independent medical examination in June 2009. (Tr. 368-69). Dr. Kohlhaas was one of three physicians who examined plaintiff in connection with her workers compensation claim and rendered an opinion related to her physical impairments. Dr. Kohlhaas opined that plaintiff had reached maximum medical improvement. He assessed plaintiff as able to work at "bench top height only" and lift 20 pounds occasionally, and he opined that she could "answer a phone, review records and assist in supervision." (Tr. 369). The ALJ gave "some weight" to Dr. Kohlhaas' opinion that plaintiff could lift no more than 20 pounds and she could answer a phone, review records, and assist in supervision. (Tr. 78). The ALJ gave "less weight" to the opinion insofar as it related to plaintiff's mental capacity; *e.g.,* her capacity to assist in supervision. (*Id.*). The ALJ found that the physical portion of the opinion was based on a full orthopedic evaluation, it was the most recent opinion, and it appeared to be the least biased. (*Id.*). These are valid reasons for partially crediting Dr. Kohlhaas' opinion.

The ALJ also discussed and weighed the opinions of the remaining two physicians who performed independent medical examinations in connection with plaintiff's workers

compensation claim: Dr. James Keller, M.D., a general surgeon who examined plaintiff in May 2008 (Tr. 375-79), and Dr. Judith Wachendorf, M.D., a physical medicine and rehabilitation specialist, who performed an independent medical examination in December 2008. (Tr. 370-73). Dr. Keller opined that plaintiff had not reached maximum medical improvement, and he recommended massage therapy to help relax her overly tightened trapezius musculature. (Tr. 377). He opined that strengthening was not indicated because plaintiff "clearly [had] good strength despite the giveaway weakness noted on physical examination." (Tr. 378). He opined that plaintiff could perform medium work but no above the shoulder lifting. (Tr. 379). The ALJ gave no weight to Dr. Keller's opinion that plaintiff was capable of performing a restricted range of medium work, finding the opinion was unsupported because plaintiff appeared to be more physically limited. (Tr. 78). The ALJ stated that Dr. Keller's opinion was the oldest opinion in the record and plaintiff's condition may have deteriorated after the opinion was issued. (*Id.*).

Examining physician Dr. Wachendorf diagnosed plaintiff with a neck sprain, cervical spinal stenosis, and adhesive capsulitis of the bilateral shoulders with myofascial pain syndrome and C3-4 protruding disk. (Tr. 372). Dr. Wachendorf opined that plaintiff had not reached maximum medical improvement based on her treating physician's continuing attempts to manage plaintiff's pain through different methods, including a TENS unit which had recently helped. Based on plaintiff's physical condition and her "pain behaviors including give way weakness and inability to move her neck much," Dr. Wachendorf assessed plaintiff as limited to "no overhead work, no work more than 2 hours, occasional writing, no movement of the head from right to left or left to right, [and] lifting less than a pound with both arms." (*Id.*). The ALJ rejected Dr. Wachendorf's opinion that plaintiff was able to work no more than two hours at a time and lift

13

no more than one pound with both arms. (Tr. 78, citing Tr. 370-73). The ALJ found these restrictions were "so extreme as to be implausible" in light of plaintiff's testimony regarding her typical activities; specifically, doing laundry, vacuuming, and caring for sick pets. The ALJ properly rejected the extreme limitations assessed by Dr. Wachendorf on this basis. *Cf. Helm v. Comm'r of Soc. Sec. Admin.,* 405 F. App'x 997, 1002 (6th Cir. 2011) (ALJ properly discounted treating physician's assessment based in part on evidence that plaintiff continued to perform significant household activities which were inconsistent with a finding of total disability).

Thus, upon review of the ALJ's decision and the evidence of record, the Court finds the ALJ fulfilled his duty under 20 C.F.R. §§ 404.1527, 416.927 to evaluate the medical opinion evidence related to plaintiff's physical impairments. It is the Commissioner's function to resolve conflicts in the medical evidence, *see Hardaway v. Sec'y of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir. 1987), which is precisely what the ALJ did in this case. The ALJ acted reasonably by according no weight to the opinions of Drs. Watson and Wachendorf and relying instead on the opinions of Drs. Hinzman and Kohlhaas. Their opinions finding plaintiff capable of a restricted range of light work are supported by the objective medical evidence of record and constitute substantial evidence in this case.

**b. The ALJ did not err in weighing the medical opinion evidence related to plaintiff's mental impairments.**

Plaintiff alleges that the ALJ erred by failing to provide "good reasons" for giving no weight to the opinion of her treating psychologist, Dr. Kevin Murphy, Ph.D. (Doc. 14 at 14-18; Doc. 23 at 3-10). Plaintiff acknowledges that the ALJ gave several reasons for rejecting Dr. Murphy's opinion. However, plaintiff alleges those reasons are specious, contrary to law, and

unsupported by the evidence. (*Id.*). In response, the Commissioner contends that Dr. Murphy did not qualify as a "treating source" when he issued his opinions in March and April 2010. (Doc. 21 at 3-4). The Commissioner further argues that in any event, the ALJ's reasons for discounting Dr. Murphy's opinions are substantially supported by the record.

Dr. Murphy first saw plaintiff in February 2010. (Tr. 466-69, 483-85). He administered the MMPI-2 and conducted a clinical interview. Dr. Murphy diagnosed plaintiff as suffering from major depressive disorder as a direct result of her December 27, 2006 workplace injury. (Tr. 468). He determined the MMPI-2 scale was invalid because of an "extremely elevated F scale," which he opined was "most likely due to her extreme confusion and poor comprehension of the items."[6] (*Id.*). He recommended ongoing psychotherapy for marked depression and possible review by a psychiatrist for psychotropic medication. (*Id.*; Tr. 485). After seeing plaintiff and reviewing the evaluation results with her the following month, Dr. Murphy saw plaintiff a third time for follow-up and the completion of paperwork for disability benefits on March 31, 2010. (Tr. 470). Dr. Murphy completed a Mental RFC Questionnaire at plaintiff's request on that same date. (Tr. 471-75). He diagnosed plaintiff with major depressive disorder, reported that she showed a good response to cognitive behavioral psychotherapy treatment, and described her prognosis as fair. (Tr. 471). As to the mental abilities and aptitudes needed to do unskilled work, Dr. Murphy rated plaintiff as limited but satisfactory in six areas, seriously

---

[6] The "F scale" is "one of several validity measurements" included in the MMPI-2. *Wilkens v. Proctor & Gamble Disability Ben. Plan*, No. 1:11-CV-521, 2013 WL 3989584, at *11, n. 24 (S.D. Ohio Aug. 2, 2013) (quoting James N. Butcher, *et al., Development and Use of the MMPI* (1990), *reprinted* The Oxford Handbook of Personality Assessment 254-55 (James N. Butcher ed., 2009)). "An elevated F scale indicates random responses or a 'fake-bad' response bias on the part of the test taker." (*Id.* at 255). "However, an elevated F scale is open to multiple interpretations and does not necessarily mean the test subject faked answers." (*Id.*).

limited but not precluded in four areas, and unable to meet competitive standards in six areas (Tr. 473); as to the mental abilities and aptitudes needed to do semiskilled and skilled work, he rated her as seriously limited but not precluded in two areas and unable to meet competitive standards in two areas; and he rated her mental aptitudes and abilities needed to do particular types of jobs as unlimited or very good or limited but satisfactory. (Tr. 473-74). Specifically, her ability to interact appropriately with the general public was limited but satisfactory and her ability to maintain socially appropriate behavior was unlimited or very good. (Tr. 474). Dr. Murphy estimated that plaintiff's impairments or treatment would cause her to be absent from work more than four days each month. (Tr. 475).

Dr. Murphy also completed a mental status questionnaire on April 19, 2010. (Tr. 478-80). He reported that plaintiff exhibited slowed speech from depressed mood as well as nervousness, excessive worry, poor concentration and memory, and fair insight and judgment. He opined that her ability to remember, understand and follow directions was fair; her ability to maintain attention was poor; her ability to sustain concentration, persist at tasks, and complete them in a timely fashion was poor; she had poor socialization and adaptation skills, and she was withdrawn; and she would not be able to "handle the stress of any kind of work." (Tr. 479).

Dr. Murphy reevaluated plaintiff on December 9, 2010. (Tr. 525). He opined that plaintiff's activities of daily living were mildly impaired by her depression, and her social functioning and concentration were moderately impaired. He opined that her general adaptation and ability to work were markedly impaired by ongoing depression. Dr. Murphy rated plaintiff as having a 35% permanent partial impairment to the body as a whole based solely on her

psychiatric condition, which he rated as a "class 3 level of impairment," or "a moderate level of impairment." (*Id.*).

Upon review of the ALJ's decision and the evidence of record, the Court initially rejects the Commissioner's argument that Dr. Murphy is not properly characterized as a treating source. The ALJ thoroughly summarized plaintiff's treatment history with Dr. Murphy in his decision. (Tr. 75-76). Although the ALJ discounted Dr. Murphy's March and April 2010 opinions based in part on the number of times Dr. Murphy had seen plaintiff and the reason for the visits, *i.e.*, evaluation purposes, the ALJ provided no indication that he considered Dr. Murphy to be anything other than a treating source when he issued those opinions. (Tr. 79). Dr. Murphy is therefore properly characterized as a treating source for disability purposes.

The ALJ gave "good reasons" for rejecting Dr. Murphy's opinions. The ALJ properly took into account the nature and extent of the treatment relationship and frequency of examination when assessing the weight to give Dr. Murphy's assessments. As a general rule, the longer a treating source has treated a claimant and the more often the claimant has been seen by the treating source, the more weight the treating source's opinions will be given. 20 C.F.R. §§ 404.1527(i)(ii), 416.927(i)(ii). Further, the more knowledge a treating source has about a claimant's impairments, the more weight the source's medical opinion will be given based on the treatment provided by the source and the kinds and extent of examinations and testing performed or ordered by the source. In determining the weight to afford Dr. Murphy's opinion, the ALJ was entitled to consider as one among several factors the limited number of times Dr. Murphy saw plaintiff before issuing his initial assessment. (Tr. 79).

17

The ALJ also properly considered the extent to which Dr. Murphy's opinions were

supported by the objective and clinical evidence, as opposed to plaintiff's subjective allegations

alone. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Objective evidence in the

psychiatric/psychological context includes "medical signs," 20 C.F.R. §§ 404.1512(b)(1),

416.912(b)(1), which are defined as "*psychological abnormalities which can be observed, apart*

*from your statements* (symptoms). . . . Psychiatric signs are *medically demonstrable* phenomena

that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought,

memory, orientation, development, or perception. They must also be shown by observable facts

that can be medically described and evaluated." 20 C.F.R. §§ 404.1528(b), 416.928(b). The ALJ

explained that Dr. Murphy's initial evaluation was not accompanied by any narrative

explanation, it appeared to be based primarily on plaintiff's subjective reports, and testing

performed as part of the initial evaluation failed to yield any objective findings due to an elevated

F scale. (Tr. 79, citing Tr. 471-75). The ALJ was entitled to discount Dr. Murphy's initial

evaluation for these reasons which indicated that the assessment was not based on objective

evidence.

In addition, the ALJ properly took into account inconsistencies in Dr. Murphy's

assessments and Dr. Murphy's failure to explain the inconsistencies. *See* 20 C.F.R. §§

404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the

more weight we will give that opinion."); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)

("Generally, the more consistent an opinion is with the record as a whole, the more weight we

will give to that opinion."). (Tr. 79). Dr. Murphy opined in April 2010 that plaintiff was not

able to handle work stress of any kind (Tr. 479), and in December 2010 he opined that plaintiff's

18

general adaptation and ability to work was markedly impaired. (Tr. 525). However, Dr. Murphy

also opined in December 2010 that plaintiff's overall level of impairment was moderate. (Tr.

525). The ALJ found that the evidence of record did not explain the inconsistency. To the

contrary, the ALJ noted that plaintiff was able to engage in activities which were inconsistent

with marked mental impairment, including seeing family members, going shopping, and caring

for five pets, some of which required medical care. (Tr. 79). In addition, the ALJ considered the

absence of any evidence showing that plaintiff had ever experienced psychological

decompensation, as well as evidence showing that she appeared to have improved with therapy

and psychotropic medication. (Tr. 79, citing Tr. 523, 3/3/11 treatment note- plaintiff reported

improvement in depression and Dr. Murphy reported some progress toward goals). The ALJ

properly discounted Dr. Murphy's opinions based on the explained inconsistencies in his

opinions and between his opinions and the record as a whole.

Thus, the ALJ thoroughly reviewed Dr. Murphy's treatment history, clinical findings, and

opinions. (Tr. 75-77). The ALJ gave "good reasons" for rejecting Dr. Murphy's opinions as

inconsistent with, and unsupported by, Dr. Murphy's own findings and the other evidence of

record. Those reasons are substantially supported by the evidence of record. In addition, the

ALJ reasonably relied on medical opinion evidence which contradicted Dr. Murphy's opinion.

Specifically, the ALJ gave "significant weight" to the opinion of consultative examining

psychologist Mr. Dale Seifert, MS.Ed.,[7] and the nonexamining state agency psychologist, Dr.

Karen Terry, Ph.D. (Tr. 78-79). Mr. Seifert opined that plaintiff had only mild limitations in the

---

[7] Plaintiff notes that the ALJ erroneously referred to Mr. Seifert, a licensed psychologist, as "Dr. Seifert." (Doc. 23 at 3). The ALJ's error was harmless. Plaintiff acknowledges that Mr. Seifert is an "acceptable medical source," and the ALJ accurately identified Mr. Seifert's credentials in his decision. (Tr. 75).

ability to relate to others, including fellow workers and supervisors; mild limitations in the ability

to understand and follow directions; moderate limitations in the ability to maintain attention to

perform simple/repetitive tasks; and moderate limitations in the ability to withstand the stress and

pressures associated with day-to-day work activity. (Tr. 433). Dr. Terry assessed moderate

difficulties in maintaining social functioning and in maintaining concentration, persistence or

pace. (Tr. 504). Substantial evidence supports the ALJ's decision that these opinions were

consistent with the record, the objective findings on examination, and plaintiff's testimony. (Tr.

78-79).

      The record therefore demonstrates that the ALJ did not err by adopting the opinions of

Dr. Terry and Mr. Seibert instead of the opinion of plaintiff's treating psychologist, Dr. Murphy.

*See Hoskins,* 106 F. App'x at 415. Substantial evidence supports the ALJ's decision to reject Dr.

Murphy's opinion. To the extent plaintiff argues that the ALJ erred because there is evidence in

the record which supports a finding of disability, plaintiff's argument is unavailing.[8] *See Buxton*

*v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001). The ALJ was not bound to adopt the opinion of Dr.

Murphy. The opinions of Dr. Terry and Mr. Seibert that plaintiff had only mild to moderate

limitations, together with Dr. Terry's conclusion that plaintiff would be capable of simple

repetitive tasks in which duties are static and changes can be explained, involving superficial

---

[8] Plaintiff makes a cryptic reference in the Statement of Errors to another treating mental health source, Dr. James D. Hawkins, M.D., who submitted treatment notes dated December 9, 2010 to October 2012. (Doc. 14 at 14). Plaintiff alleges that Dr. Hawkins submitted treatment notes to the Appeals Council but the Appeals Council "took no particular notice." (*Id.*). Plaintiff has waived any argument pertaining to Dr. Hawkins' treatment notes by averting to them in this perfunctory way. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

interaction with co-workers and supervisors, and involving no strict production quotas, constitute substantial evidence in this case. The Commissioner reasonably resolved the conflicts in the medical evidence in deciding to credit these opinions over Dr. Murphy's opinion.

### c. Conclusion

For the reasons discussed above, the ALJ did not err in evaluating the medical opinion evidence related to plaintiff's physical and mental impairments. The ALJ properly considered the evidence and gave "good reasons" for rejecting the opinions of plaintiff's treating medical providers. The ALJ's decision to give those opinions no weight and to rely instead on the opinions of the examining and nonexamining medical sources is substantially supported by the record. Plaintiff's second assignment of error should be overruled.

### 2. The ALJ did not err in assessing plaintiff's credibility (first and third assignments of error)

Plaintiff alleges that the ALJ erred in assessing her credibility. (Doc. 14 at 9-13, 19-20). Title 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of

pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other

factors concerning functional limitations and restrictions due to pain or other symptoms.  20

C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p.  "[A]n ALJ's findings based on the credibility of

the applicant are to be accorded great weight and deference, particularly since an ALJ is charged

with the duty of observing a witness's demeanor and credibility."  *Walters*, 127 F.3d at 531.

"Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial

evidence."  *Id.*

      Initially, plaintiff alleges that the ALJ engaged in circular logic by issuing a boilerplate

credibility finding to the effect that plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the

intensity, persistence and limiting effects of the symptoms were not credible to the extent they

were inconsistent with the ALJ's RFC assessment.  (Doc. 14 at 9-10).  In support of her position,

plaintiff cites to *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010), in which the Seventh

Circuit held that similar boilerplate language was not sufficiently detailed to provide the

reviewing court with the grounds upon which the RFC determination was based.

      The Court agrees that the boilerplate language cited by the ALJ is virtually meaningless.

However, the blatant deficiencies which led the Court to overturn the credibility finding in

*Parker* are not present here.  In contrast to *Parker*, the boilerplate language the ALJ used in this

case is followed by a detailed basis for the ALJ's credibility determination.  (Tr. 71-79).  In fact,

plaintiff discusses the evidence and the many factors the ALJ considered in discounting her

credibility.  (Doc. 14 at 11-12).  Accordingly, a sufficient record exists here to allow the Court to

understand the weight given the plaintiff's statements and to determine whether or not the ALJ's credibility determination is supported by substantial evidence.

Upon review of the ALJ's complete credibility determination, the Court finds that the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ made extensive findings regarding plaintiff's credibility in connection with his determination that plaintiff retained the RFC to perform light work with both exertional and nonexertional restrictions. (Tr. 71-79). The ALJ thoroughly discussed the evidence in support of his finding that plaintiff's allegations of disabling symptoms were not fully credible in light of the objective evidence and clinical examination findings, her activities of daily living, inconsistencies in plaintiff's testimony, evidence of exaggerated symptoms, and medical opinion evidence showing that plaintiff is capable of performing a limited range of light work.

There is substantial evidence to support the ALJ's finding that plaintiff's allegations were not fully credible, including inconsistencies between plaintiff's hearing testimony and the written submissions she provided to the agency. *See Warner*, 375 F.3d at 392-93 (the ALJ may consider the claimant's testimony of limitations in light of other evidence of household and social activities engaged in by the claimant). Although plaintiff testified that she could not turn her neck or look down, she nonetheless was able to drive occasionally and to care for five pets, including their medical needs, do some laundry, and perform some cleaning. (Tr. 77, citing Tr. 8-44, 207-15, 228-36). In addition, plaintiff gave inconsistent reports of her limitations by testifying at the ALJ hearing that she saw her family only once a month and self-isolated, but also that family members helped her frequently. (*Id.*).

23

The ALJ also reasonably discounted plaintiff's testimony concerning her physical limitations as too extreme to credit. According to the ALJ, plaintiff's testimony about her standing and sitting limitations indicated she would need to spend 6 hours each day lying down (Tr. 77); however, there is no support in the record for a restriction of this nature. Further, contrary to plaintiff's argument, the ALJ was entitled to discount plaintiff's testimony about her extreme physical restrictions based on his observations of her at the hearing. Having observed that plaintiff never stood or asked to stand during the one-hour plus hearing, the ALJ dismissed as "not persuasive" plaintiff's testimony that she can sit for only 10 minutes at a time and for up to 20 minutes total in an 8-hour day. (Tr. 77). Plaintiff cites two Sixth Circuit cases that she alleges have discredited the so-called "sit and squirm" test applied by the ALJ. (Doc. 14 at 12, citing *Martin v. Sec'y of Health and Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984) and *Johnson v. Comm'r of Soc. Sec.*, No. 99-1438, 2000 WL 332059 (6th Cir. Mar. 22, 2000)). The Court in *Martin* rejected use of the test and the ALJ's dismissal of a claim based on pain premised "*solely* on the ALJ's observations at the hearing." *Martin*, 735 F.2d at 1010 (quoting *Weaver v. Sec'y of Health and Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) (emphasis added)). In *Johnson*, however, the Court upheld the denial of benefits despite the ALJ's use of the "sit and squirm" test. *Johnson*, No. 99-1438, 2000 WL 332059, at *4 (ALJ wrote one sentence noting the plaintiff's demeanor at the hearing was "essentially unremarkable and there were no indications of severe pain or discomfort"). The Court reasoned that the ALJ's personal observation was but one of several factors, not the sole factor, in the ALJ's determination that the plaintiff's pain was not disabling. *Id.* This case is more akin to *Johnson* because plaintiff's demeanor at the hearing was only one of many factors on which the ALJ relied to assess her

24

credibility. Moreover, unlike the ALJ in either *Martin* or *Johnson*, the ALJ in this case did not rely on plaintiff's demeanor generally. Instead, the ALJ considered only her demonstrated ability to sit for an extended period of time, which was inconsistent with plaintiff's own testimony on this specific function. The ALJ was entitled to take plaintiff's apparent ability to sit for an extended period of time into account when assessing her credibility. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (in light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir. 1981).

In addition, the ALJ reasonably determined that the medical evidence did not support plaintiff's allegations of disabling symptoms. Plaintiff's treating psychologist, Dr. Murphy, assessed only a moderate level of psychological impairment. (Tr. 525). Further, as discussed earlier, several examining physicians and reviewing physicians, whose findings the ALJ thoroughly considered, assessed plaintiff as capable of performing a restricted range of light work. Finally, there were unexplained gaps in plaintiff's treatment which cast doubt on her allegations of debilitating pain. Plaintiff testified at the December 2011 hearing that she had not seen her pain management specialist, Dr. Watson, since April 2011 because he had retired; however, she inexplicably had not seen another physician in his place. (Tr. 11-12). The ALJ reasonably deemed plaintiff's failure to seek treatment for her pain symptoms for a period of approximately eight months to be inconsistent with her complaints of debilitating pain. *See Helm,* 405 F. App'x at 1001 (modest treatment regime is generally "inconsistent with a finding of total disability.").

25

Thus, plaintiff has not shown that the ALJ committed any error in connection with his assessment of plaintiff's credibility. The ALJ thoroughly evaluated the relevant factors and evidence of record. The "contradictions among the medical reports, claimant's testimony, and other evidence" substantially support the ALJ's decision to discount plaintiff's credibility. *Walters*, 127 F.3d at 531. The ALJ's credibility finding is therefore entitled to deference. *Id.* Plaintiff's first and third assignments of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: 12/1/14

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

KARA ELLEN DOWNS,
      Plaintiff,

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:13-cv-923
Spiegel, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).